IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Terrence J. Hickey and T. Patrick Broyhill, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Resolution Management Consultants, Inc., ) <br> and Jeffrey B. Kozek, ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No.: 2:12-0707-PMD <br><br> **ORDER** |

This matter is before the Court upon Plaintiffs' Terrence J. Hickey ("Hickey") and T. Patrick Broyhill ("Broyhill") (collectively, "Plaintiffs") Motion to Dismiss the amended[1] counterclaims filed by Defendants. Defendants assert three counterclaims against Plaintiffs: (1) Abuse of Process; (2) Civil Conspiracy; and (3) Barratry. For the reasons that follow, the Court grants Plaintiffs' Motion to Dismiss.

**PROCEDURAL HISTORY/ BACKGROUND**

**I.     History Between the Parties**

In 2003, Resolution Management Consultants, Inc. ("RMC")[2] sued Hickey and Broyhill on various claims[3] related to their employment by RMC and their post-employment activities.

---

[1] Defendants moved for leave to amend their answer, which this Court granted on May 3, 2012.
[2] RMC is a corporation organized and existing under the laws of New Jersey and with its principal place of business in New Jersey. Plaintiffs state that they were employed by a separate corporation, also known as Resolution Management Consultants, Inc., a Georgia corporation (referred to in the Complaint as "RMC Georgia"). Plaintiffs state that RMC Georgia brought the 2003 suit against them. However, in their Answer, Defendants deny that RMC Georgia was involved in the 2003 suit and they also deny RMC Georgia's involvement in any subsequent suit between these parties. Defendants state that RMC Georgia was dissolved in 2003. For purposes of this Order, it does not matter which corporation was involved in the underlying suits. It is undisputed that RMC, a New Jersey corporation, is being sued in the instant action.
[3] Such as, Breach of Loyalty and Breach of Employment Agreement.

After a bench trial,[4] Master in Equity Judge Mikell Scarborough found for Hickey and Broyhill on January 10, 2007. The Judge found that RMC's claim [for disloyalty against Hickey] cannot[] be said to have been pursued in good faith . . . RMC never possessed more than a mere suspicion." Pls.' Mot Dismiss Am. Answer, at 1. The order further stated that RMC introduced no proof of either a breach of Broyhill's employment contract or any damages stemming from the alleged breach. *Id.* There was no appeal.

On March 3, 2008, Plaintiffs sued RMC and its principals, including Defendant Kozek, for malicious prosecution and civil conspiracy. The claims were bifurcated and separate jury trials were held. Verdicts[5] were returned in favor of both Plaintiffs on the malicious prosecution claim against RMC. But, in both cases, the trial judge dismissed with prejudice the claims against the individual defendants and the claim against RMC for civil conspiracy. RMC appealed the verdicts and Plaintiffs appealed the dismissal of their claims against the individual defendants and their civil conspiracy claim against RMC.[6] Oral argument before the Fourth Circuit was heard May 22, 2012.

On August 2, 2012, Defendants' attorney delivered a letter to Plaintiffs' attorney that, according to Plaintiffs, threated that unless Plaintiffs agreed to settle both their judgments for $60,000.00, Defendants[7] would file a malicious prosecution case against them in South Carolina, North Carolina, and New Jersey. The gravamen of these suits was the dismissal of the claims against the individual defendants and the dismissal of the civil conspiracy claim against RMC in the South Carolina suit. On September 13, 2010, by email, Defendants' attorney made the same

---

[4] This action was consolidated with another case originally filed by Hickey against RMC.
[5] The verdict for Hickey was $5,691.38 and the verdict for Broyhill was $291,000.00.
[6] Plaintiffs argued on appeal that the judge erred in ruling that corporate officers could not be liable for their own torts and erred in dismissing the civil conspiracy claim against all defendants because special damages were proven by Plaintiffs stemming solely from the conspiracy.
[7] Along with two other RMC principals, Gerard O'Keefe and Thomas Cummings.

threat of commencing litigation, emphasizing the substantial legal expenses Plaintiffs would incur. Plaintiffs refused to accept the reduced amount set forth in the demand. On September 27, 2012 suit was filed in New Jersey state court against Hickey and Broyhill for malicious prosecution and civil conspiracy. They removed the case to federal court and subsequently, RMC dismissed the claims.  RMC then re-filed four separate actions in New Jersey state court against them on the same grounds, but this time it purported to limit its recovery to "a total amount not to exceed $75,000." Hickey and Broyhill, again, removed the cases to federal court on diversity grounds arguing, among other things, that RMC improperly and in bad faith splintered its original action brought against them into four separate actions merely to avoid federal subject matter jurisdiction. The New Jersey District Court remanded the cases because Hickey and Broyhill failed to establish to a legal certainty that the amount in controversy exceeded $75,000.00. On October 27, 2011**,** the New Jersey state court granted the their motion for dismissal of all four cases on the basis that the allegations in the complaint were not ripe due to the pending appeal with the South Carolina Court of Appeals.

## II.     Nature of this Case

On February 9, 2012, Plaintiffs filed the present lawsuit against Defendants asserting claims for abuse of process and malicious prosecution. The matter was removed to this Court on March 9, 2012. Plaintiffs seek to recover the substantial expenses incurred by them in defending the two sets of cases filed against them in New Jersey by Defendants. Plaintiffs allege that Defendants' actions constitute abuse of process because the New Jersey lawsuits were instituted with the knowledge that they were premature and for a purpose other than for which the lawsuit were structured—to coerce Plaintiffs into settling their South Carolina judgments for an unreasonably low amount. Plaintiffs also allege that the pursuit of these actions, which stemmed

3

from Plaintiffs' successful prosecution of civil actions in South Carolina, constitutes malicious prosecution because Defendants were aware that there was no probable cause to believe the allegations made therein were true or sufficient to support recovery as the question of their susceptibility to the claims in South Carolina had yet to be determined.

On March 9, 2012 Defendants filed an Answer and asserted two counterclaims against Plaintiffs for (1) Abuse of Process and (2) Civil Conspiracy. On March 27, 2012, Plaintiffs filed their Motion to Dismiss. Subsequently, Defendants filed a Motion for Leave to Amend, which this Court granted on May 3, 2012. In large part, Defendants added a Barratry counterclaim against Plaintiffs. Plaintiffs then filed another Motion to Dismiss, to which Defendants filed a Motion in Opposition and Plaintiffs replied.

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *F.T.C. v. Innovative Mktg., Inc.,* 654 F. Supp. 2d 378, 384 (D. Md. 2009). The Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940 (*citing Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950; *see also Harman v. Unisys Corp.*, No. 09-1298, 2009 WL 4506463, at *2 (4th Cir. Dec. 4, 2009). The Court added that "the tenet that a court must accept as true all

of the allegations contained in the complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## DISCUSSION

I.  **ABUSE OF PROCESS**

Plaintiffs seek dismissal of Defendants' abuse of process counterclaim pursuant to Rule 12(b)(6) for failure to plead facts that, if taken as true, would satisfy the elements of an abuse of process claim. In order to prevail on a claim for abuse of process, a party must show two essential elements: (1) an ulterior purpose; and (2) a willful act in the use of process not proper in the conduct of the proceeding. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 567 S.E.2d 251, 253 (S.C. Ct. App. 2002). "An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process." *Id.* Defendants allege that Plaintiffs' ulterior motive in filing this action was for the purpose of coercing Defendants to dismiss their appeals of the jury verdicts in favor of Hickey and Broyhill, currently pending before the South Carolina Court of Appeals. Defs.' Am. Answer ¶ 21. Plaintiffs concede that Defendants adequately allege that Plaintiffs initiated this action for an improper, collateral purpose—to coerce Defendants to dismiss their appeals. However, Plaintiffs argue that "Defendants do not allege any 'wayward actions' by Plaintiffs" and therefore, the claim must be dismissed for failure to plead the second element. Pls.' Mot. Dismiss Am. Answer, at 5.

A willful act in this context has been defined as "[s]ome definite act . . . not authorized by the process or aimed at an object not legitimate in the use of the process . . . ." *Hainer v. Am.*

*Med. Int'l, Inc.*, 492 S.E.2d 103, 136 (S.C. 1997). The willful act element itself is "comprise[d of] three components: 1) a 'willful' or overt act 2) 'in the use of the process' 3) that is improper because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective." *Food Lion, Inc.*, 567 S.E.2d at 253-54. "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Huggins v. Winn-Dixie Greenville, Inc.*, 153 S.E.2d 693, 694 (S.C. 1967) (citation omitted). Furthermore, according to the court in *Food Lion,*

> "One who uses a legal process, whether criminal or civil, against another *primarily* to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." As noted in the Restatement comment, "the significance of ['primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Accordingly, liability exists not because a party merely seeks to gain a collateral advantage by using some legal process, but because the collateral objective was its sole or paramount reason for acting.

567 S.E.2d at 255-56 (internal citations omitted).

Defendants state that Plaintiffs' lawsuit is based on substantially the same claims that Defendants brought in New Jersey state court, which were dismissed on ripeness grounds. As a result of this ruling, Defendants contend that Plaintiffs have full knowledge that their lawsuit lacks merit and therefore, they have willfully filed a frivolous lawsuit in an attempt to coerce Defendants into dismissing their pending appeals. Defs.' Am. Answer ¶ 22. The Court finds that Defendants' allegation that Plaintiffs' lawsuit is frivolous based upon the previous ruling of the New Jersey court, lacks merit.[8] Plaintiffs' claims in the instant lawsuit do not arise out of the

---

[8] Specifically, Defendants allege that "Plaintiffs' brought the current action for abuse of process, malicious prosecution, and civil conspiracy—two of the same claims that were dismissed without prejudice by the New Jersey court." Defs.' Opp. Memo, at 7. However, Plaintiffs have

6

South Carolina action, as did Defendants' claims against Plaintiffs in the New Jersey actions. Plaintiffs' claims, unlike Defendants, are ripe for adjudication because this Court's decision does not rest upon the outcome of the appeals of the South Carolina decision. Therefore, Plaintiffs' act of filing the present lawsuit is insufficient to meet the "willful act" requirement necessary to properly plead an abuse of process claim.

South Carolina law describes the nature of a willful act not proper in the process as taking

> the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as surrender of property or payment of money, by the use of the process as a threat or club. There is in other words a form of extortion that is done in the course of negotiation, rather than the issue of any formal use of process itself which constitutes the tort.

*Scott v. McCain*, 274 S.E.2d 299, 301 (S.C. 1981). Liability for abuse of process exists not because a party merely seeks to gain some collateral advantage, but because the claimed improper collateral objective was its "sole or paramount reason for acting." *Southern Glass & Plastics, Co. V. Duke*, 626 S.E.2d 19, 23-24 (S.C. Ct. App. 2005). Defendants do not allege any acts taken by Plaintiffs after initiation of this proceeding whereby Plaintiffs sought to use the existence of the proceeding to gain an advantage in some collateral matter nor do Defendants allege any willful acts that caused process. *See Food Lion*, 567 S.E.2d at 254 n.3 (finding that the "willful act requirement is not limited to those abusive acts occurring *after* process has issued, but includes coercive or extortionate acts that *cause* process to issue in the first instance") (emphasis in original). To successfully bring an abuse of process claim, there must be an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do. *See Huggins*, 153 S.E.2d at 696. For example, in

---

not alleged a civil conspiracy claim in the existing action. In fact, there was only one similar claim dismissed by the New Jersey court that is now before this Court—the malicious prosecution claim.

*Huggins*, the willful act supporting the abuse of process claim was the store manager's use of the criminal process to coerce Huggins into paying $10 for items allegedly stolen from the store. *Id.* Here, there is no such perversion—collection of damages for claims of abuse of process and malicious prosecution is a proper purpose and use of the process. *See Food Lion*, 567 S.E.2d. at 255 ("[T]he mere use of the legal process . . . does not constitute abuse of process. Some act must be alleged whereby there has been a misuse or perversion of the process of the court." (*quoting Kirchner v. Greene*, 691 N.E.2d 107, 116-17 (Ill. Ct. App. 1998) (internal quotations omitted))).

Additionally, for the first time in Defendants' opposition memorandum, Defendants argue that Plaintiffs' removal of the four New Jersey actions, despite the *ad damnum* clause limiting recovery, is sufficient to meet the "willful act" requirement. The Court disagrees. Each complaint in Defendants' New Jersey actions contained an *ad damnum* clause limiting damage to "a total amount not to exceed $75,000.00." Upon seeking removal of these actions, Plaintiffs did not dispute that one may limit her claims to an amount below the jurisdictional minimum. Instead, Plaintiffs raised several arguments[9] to support their contention that the true amount in controversy exceeded $75,000.00 and thus, the act of limiting damages was in bad faith. The New Jersey District Court, relying on *Frederico v. Home Depot*, 507 F.3d 188, 196 (3d Cir. 2007), applied the legal certainty test whereby the burden shifts to the removing party to show to a legal certainty that the amount in controversy exceeds the statutory threshold. In its order, the court addressed the arguments made in their notice of removal and noted the heavy burden placed upon the removing party. The court was not persuaded by any of the arguments and

---

[9] Such as, the Original Action was improperly splintered into four separate actions to avoid federal subject matter jurisdiction and the claims against Hickey and Broyhill were improperly splintered because they are jointly and severally liable and the alleged damages against each must be aggregated to determine the true amount in controversy.

found no evidence of bad faith. Because any doubt as to whether damages would actually exceed the threshold amount warrants remand, the court concluded that it lacked jurisdiction and remanded the cases to New Jersey state court. Notably, there was no request for and the court chose not to issue any sanctions or require the removing party to pay costs or attorney's fees as a result of the, ultimately unsuccessful, removal. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists, fees should be denied.").

Plaintiffs' removal of the New Jersey cases was not so objectively unreasonable to amount to a willful act for purposes of Defendants' abuse of process counterclaim in the instant action. Defendants have failed to show how the removal was a misuse or perversion of the legal process. "[T]here is no liability where the defendant does nothing more than carry out the process to its authorized conclusion *even though with bad intentions*." *Duke*, 626 S.E.2d at 24 (emphasis added). As noted by the Fourth Circuit, "[e]rroneous removal might very well be the result of an honest but forgivable mistake of legal judgment . . . ." *In re Crescent City Estates, LLC*, 588 F.3d 822, 830 (4th Cir. 2009). Defendants have not alleged any improper willful acts by Plaintiffs, and absent such an allegation, their counterclaim fails to state a cause of action for abuse of process.

## II. CIVIL CONSPIRACY

Plaintiffs move the Court to dismiss Defendants' counterclaim that Plaintiffs conspired with one another to "without merit, [] remove the four New Jersey state court actions to federal court on the basis of diversity, despite the presence of an allegation in the Complaint stating that Defendants were not seeking recover greater than $75,000.00, thereby excluding federal jurisdiction beyond question." Defs.' Am. Answer ¶ 28. The tort of civil conspiracy has three elements: "(1) the combination of two or more persons, (2) for the purpose of injuring the

9

plaintiff, and (3) causing plaintiff special damage. *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009). Further, a civil conspiracy claim must allege "additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint" and the alleged damages "must go beyond the damages alleged in other causes of action." *Id.* The only acts allegedly taken by Plaintiffs in furtherance of the conspiracy mentioned in Defendants' Amended Answer, as outlined above, relate to Plaintiffs, ultimately unsuccessful, removal of Defendants' four New Jersey actions. Plaintiffs assert that Defendants' civil conspiracy cause of action fails as a matter of law because it mirrors the allegations asserted by Defendants in their abuse of process (¶ 24) and barratry causes of action (¶¶ 31, 32):

> 24. Plaintiffs ulterior purpose is further evidenced by Plaintiffs' conduct in their meritless removal of the New Jersey state court actions discussed below.
>
> 31. & 32. Plaintiffs . . . willfully brought and maintained actions and claims . . . with the intent to distress and harass Defendants. Specifically, Plaintiffs made a calculated decision to continue their acts of barratry by removing the New Jersey actions despite knowing the actions were not removable.

In fact, Defendants acknowledge that the acts relating to the civil conspiracy counterclaim are similar to the acts complained of in their abuse of process counterclaim. But, they argue that "in the event one or more of the wrongful acts are deemed by a jury to be insufficient for the abuse of process claim, the jury should be allowed to determine whether that wrongful act was sufficient to rise to the level of civil conspiracy." Defs.' Opp. Memo, at 12 n.3. The Court notes that a party is not prevented from pleading alternative theories in cases involving civil conspiracy, but under current case law, specifically *Todd v. S.C. Farm Bureau*

*Mut. Ins. Co.*,[10] "when a party wishes to assert multiple cause of action, including civil conspiracy, it must allege acts in furtherance of the conspiracy and special damages that are separate and independent of the other acts and damages that underlie the other causes of action within the same complaint." *Hackworth*, 682 S.E.2d at 876. Defendants have merely restated an alleged wrongful act already pled in relation to Defendants' other two counterclaims. *See Kuznik v. Bees Ferry Assocs.*, 538 S.E.2d 15, 31 (S.C. Ct. App. 2000) ("Because [the third party plaintiff] . . . merely realleged the prior acts complained of in his other causes of action as a conspiracy . . . he was not entitled to maintain his conspiracy cause of action."). Accordingly, Defendants' civil conspiracy counterclaim must be dismissed. *See Hackworth*, 682 S.E.2d at 875 ("[O]ne must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim.").

## III.   BARRATRY

Plaintiffs seek dismissal of Defendants' barratry counterclaim on the basis that, if such a civil cause of action exists in South Carolina, Defendants have failed to allege the necessary elements as required by common law for such an action. Plaintiffs cite to *Osprey, Inc. v. Cabana Ltd. P'ship*, 532 S.E.2d 269 (2000), where the South Carolina Supreme Court discussed the history of barratry and related doctrines, such as "champerty" and "maintenance," and explicitly cited to *State v. Chitty*, 17 S.C.L. (1 Bail.) 379 (1830) when defining barratry. "Barratry (or barretry) is the offense of frequently exiting and stirring up quarrels and suits between other individuals." *Osprey*, 532 S.E.2d at 273 (*citing Chitty*, 17 S.C.L. (1 Bail) at 400). The Supreme Court also quoted the C.J.S. and Am.Jur.2d articles on champerty and maintenance, which

---

[10] 276 S.C. 284, 278 S.E.2d 607 (1981), *rev'd on other grounds,* 283 S.C. 155, 321 S.E.2d 602 (1984) *quashed in part on other grounds,* 287 S.C. 190, 336 S.E.2d 472 (1985).

provide that barratry is a "form[] of maintenance, which is defined as 'an officious intermeddling in a suit that in no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend [the suit].'" *Id.* Plaintiffs argue that all Defendants have alleged is that they have sued Defendants in actions seeking precisely the relief accord to them by South Carolina law. Because there is no allegation that Plaintiffs have stirred up other individuals to file suit, Defendants barratry counterclaim must be dismissed.

Defendants allege that Plaintiffs "willfully brought and maintained actions and claims, and took procedural steps in those actions and claims . . . with the intent to distress and harass Defendants." Defs.' Am. Answer ¶ 31. The specific acts of barratry allegedly taken by Plaintiffs were removing the New Jersey actions, despite knowing the actions were not removable, and filing the current lawsuit, despite having argued to the New Jersey court that nearly identical claims brought against Plaintiffs were not ripe due to the related matters pending before the Court of Appeals of South Carolina. *Id.* at ¶¶ 32, 33. Defendants argue that their barratry counterclaim is supported by S.C. CODE ANN. § 16-17-10, a criminal barratry statute, which states in relevant part: "[a]ny person who shall (2) willfully bring, prosecute or maintain an action, a law or in equity, in any court having jurisdiction within this State and (c) bring such action with intent to distress or harass any party . . . shall be guilty of the crime of barratry. Defendants contend that "Plaintiffs' reliance on *Chitty* is ill-founded as the legislature clearly overruled the holding in *Chitty* by enacting S.C. CODE ANN § 16-17-10." Defs.' Opp. Memo, at 13. The Court disagrees.

The legislature's enactment of a criminal statute prohibiting barratry in no way voided the existing common law concerning the tort of barratry. *See* S. C. CODE ANN. § 16-17-50 (1985) (statutory barratry provisions are cumulative and not intended to repeal any common law

provisions regarding barratry). Defendants appear to be aware of the cumulative nature of the criminal statute by stating that "§ 16-17-10 *and the subsequent case law*," meaning since *Chitty*, but including *Osprey*, "is more applicable for determining what must be proven in order to state a claim for barratry." Defs.' Opp. Memo, at 13 (emphasis added). Furthermore, Defendants cite to *Osprey* to support their position that South Carolina does, or will, recognize a civil cause of action for barratry.[11] But, as noted above, *Osprey* cites to the *Chitty* case for a description of barratry and also relies on subsequent case law defining barratry as "a continuing practice of maintenance or champerty." *Osprey*, 532 S.E.2d at 273 (*citing In re Primus*, 436 U.S. 412, 424 n.15 (1978)). When addressing a civil—not criminal—barratry claim, the common law definitions, as first announced in *Chitty*, apply. Therefore, assuming without deciding that a civil barratry claim still exists in South Carolina, the Court finds that Defendants have failed to satisfy the necessary elements for such a claim as established by common law.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion to Dismiss the Amended Counterclaims is **GRANTED.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**June 29, 2012.**

---

[11] In abolishing the defense of champerty, the Supreme Court of South Carolina [in *Osprey*] reasoned that "other well-developed principles of law can more effectively accomplish the goals of preventing speculation in groundless lawsuits and the filing of frivolous suits than dated notions of champerty." *Osprey*, 532 S.E.2d at 277. In a non-exhaustive list, the Court noted barratry as an example of one of the more "well-developed" principles of law.